POPOVICH, Judge,
dissenting:
I cannot join in the Majority’s determination to invalidate the post-nuptial agreement between the appellant/wife and appellee/husband on the ground that there was a failure on the part of the appellee to give a “full and fair” disclosure of his assets to the appellant prior to the execution of the agreement in question.
To begin with, the law is quite clear that disclosure of one’s assets in regard to a pre- or post-nuptial agreement must be both “full and fair”. Nonetheless, it is equally accepted in the law that disclosure of the “exact” value of the spouse’s worth is unnecessary. See In re Holwig’s Estate, 348 Pa. 71, 33 A.2d 915 (1943); In re Groffs Estate, 341 Pa. 105, 19 A.2d 107 (1941).
Moreover, I would offer that one is to be guided by the polestar looked to in any inquiry regarding the validity of any contractual agreement, i.e., whether the alleged misrepresentation was a “material” one which, had it been made known to the uninformed party, would have prompted such a party not to sign the agreement. See In re McClelland’s Estate, 365 Pa. 401, 75 A.2d 595 (1950). A similar rule is *513 set forth in Restatement (Second) of the Law of Contracts, § 164 (1981), wherein it is written:
(1) If a party’s manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.
Further, one of the three requirements that has to be met to trigger the invalidation of the contract is that the “misrepresentation must have induced the recipient to make the contract.” Id at Comment a.
From the testimony recounted in the Majority Opinion, we learn that the appellee admitted not informing the appellant of a second source of income. However, upon closer scrutiny, we are apprised by the appellee that this supposedly nefarious activity, which prompted him to invoke his Fifth Amendment right to remain silent as to the source of the revenue, netted him probably more than a hundred dollars but less than one thousand dollars for the 1983 tax year — the year the agreement was signed.
Continuing, under the facts instantly, we have testimony of a ten-year marriage in which the appellee signed all of his checks over to the appellant to pay bills and deposit in the bank. Surely, the appellant, after all of this time, was aware of the value of the homestead she relinquished by the terms of the agreement to the appellee since she was to pay the family expenses and the mortgage with the monies received. This is buttressed by the trial court’s finding that the appellant “handled all of the finances of the couple during the time that they lived together as husband and wife.”
Thus, we have a situation in which the appellant gave up her share in a home valued between $38,000 and $47,000, she was relieved of the obligation to pay encumbrances amounting to $2,208.96, she relinquished her right to custody of the children and alimony, all in exchange for a Volkswagen and the opportunity to be free of debts as well *514 as acquiring her personal belongings and some furnishings from the marital home.
In light of the estate involved, which I find was fully and fairly disclosed by the appellee, I cannot agree with the Majority that the appellee’s failure to disclose his income of approximately $100 to the appellant could be considered a material misrepresentation warranting a revocation of the Marriage Settlement Agreement. See Laub v. Laub, 351 Pa.Super. 110, 505 A.2d 290 (1986) (In assessing the enforceability of a marriage agreement, the requirement is that of a full disclosure of one’s financial worth at the time the agreement is entered; income need not be separately listed).
There is no assertion by the appellant that had she been told of the appellee’s surreptitious accumulation of some $100 in 1983 she would never have signed her name to the post-nuptial agreement. Consequently, one cannot say that the non-disclosure was a material misrepresentation rendering the agreement voidable. See In re McClellan’s Estate, supra; Restatement (Second) of the Law of Contracts, supra.
Furthermore, the Majority cannot point to anywhere in the law where “full and fair” has been equated with “exact” in the disclosure of a husband’s/wife’s assets, in determining the validity of a pre- or post-nuptial agreement being assailed by a disenchanged husband/wife.
Therefore, it is difficult, if not impossible, to construe from the facts at bar a conclusion that (1) had the appellant been advised of the appellee’s $100 second income source she would never have signed the agreement, or (2) that the misrepresentation of the appellee on such a point was material to the agreement so as to make it voidable at the election of the appellant.
Accordingly, finding that the Majority has strayed from the settled law in this case, I respectfully dissent.
DEL SOLE and KELLY, JJ., join.